UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARK JOSEPH BENEDICT,

    Plaintiff,                              CASE NO.

v

                                                    HON.

MICHIGAN SPRING & STAMPING, LLC,

    Defendant,

_____

Kevin B. Even (P38599)
Christopher S. Berry (P68580)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiff
keven@shrr.com; cberry@shrr.com
900 Third St., Ste 204
Muskegon, MI 49440
231-724-4320

## COMPLAINT

NOW COMES the above-named Plaintiff, Mark Joseph Benedict, by and through his attorneys, SMITH HAUGHEY RICE & ROEGGE and for his complaint against Defendant, Michigan Spring & Stamping, LLC states:

**JURISDICTION, VENUE AND PARTIES**

1.     This is an action to enforce rights arising out of Plaintiff's employment relationship with Defendant.

2.     Plaintiff is a resident of the State of Michigan.

3.     Defendant is a Michigan limited liability company that maintains its principal place of business in and does business in the Western District of Michigan and is subject to the jurisdiction of this Court.

4. The amount in controversy in this action exceeds Twenty-Five Thousand Dollars ($25,000.00) exclusive of interest, costs and attorneys' fees.

5. The United States District Court for the Western District of Michigan has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, § 1132(e)(1) and § 1367 as it raises a question of federal law and the issues of state law arise from a common nucleus of operative fact.

6. The events giving rise to this cause of action occurred in the Western District of Michigan.

## BACKGROUND FACTS

7. Plaintiff was employed by Defendant on or about December 3, 2014 as a set-up operator.

8. On May 23, 2015, Plaintiff was promoted to lead person.

9. During Plaintiff's employment with Defendant he received performance evaluations which found his job performance to be satisfactory, meeting expectations and exceeding the performance expectations of Defendant.

10. At the onset of Plaintiff's employment with Defendant, Plaintiff was provided with a copy of Defendant's Employee Handbook.

11. Defendant's Employee Handbook contains a letter from their President that includes the following:

> At Michigan Spring and Stamping, the old fashioned virtues of honesty, integrity and respect for the law and its employees are highly held and actively praised. Although Michigan Spring and Stamping has always sought to follow the highest standards of ethics in its business, the Executive Managers decided to put its practices and policies in writing.

12. Defendant's Employee Handbook also sets forth its "Open Door Policy" which provides:

> It is Michigan Spring and Stamping's desire to provide excellent working conditions and maintain harmonious working relationships between employees and management, as well as amongst coworkers. When you look at the challenges in the automotive industry, the companies that will be successful are those where employees and management work together in harmony.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

-2-

SHRR\4515661.v1

> The Company has an "open door" problem-solving policy. If you have any work-related problem, question, or request, you are encouraged to discuss it with your Supervisor or Manager. Employees who believe that their Supervisor or Manager has not or cannot adequately address their issue(s) are encouraged to discuss the problem with any other Supervisor, Manager, Human Resources or President.
>
> The purpose of the Open Door is to maintain effective communications. It is your right, through the Open Door, to speak to anyone with whom you feel comfortable about any concerns, problems, or suggestions for improvement, without fear of retaliation or punishment. By improving communications, small problems can be prevented from growing into larger ones.
>
> Do not minimize the importance and responsibility of communicating problems that you encounter. It is our goal to have employees communicate comments and opinions with other colleagues and/or departments in a proper, effective, and timely manner. We strive to establish mutual trust and helpful team members throughout the organization.
>
> Problems or concerns do not usually take care of themselves. They must be talked about with people who are ready to listen and take appropriate action. Remember, we cannot help you solve a problem unless we know there is one. Talk to us. Our door is always open.

13. On or about February 12, 2018, Plaintiff was awaiting the birth of his daughter and made a timely written request to Defendant to take twelve (12) weeks of leave under the Family Medical Leave Act ("FMLA") of job-protected unpaid leave to bond with and to provide postpartum care to his soon to be newborn daughter.

14. Defendant failed to timely grant Plaintiff his leave requested under the FMLA which exposed Plaintiff to termination for failing to be present at work without authorized leave and as such Plaintiff was denied leave requested under the FMLA to which he was entitled.

15. On August 22, 2018, more than twelve (12) weeks after the birth of Plaintiff's daughter, Defendant belatedly approved Plaintiff's requested leave under the FMLA of January/February 2018.

16. On or about October 11, 2018, Plaintiff made a request for short term disability from October 26, 2018 until December 24, 2018 in order to undergo and recover from foot surgery as set forth in his attending physician's statement.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\4515661.v1

17. Plaintiff was authorized by Defendant to go on short term disability as of October 26, 2018, pursuant to Defendant's employee benefit plan, for which Plaintiff had timely submitted the appropriate paperwork.

18. Prior to the commencement of Plaintiff's short-term disability, while off duty and on his personal time, he requested a meeting with Mike Dipiazza his Supervisor, Paul Vanderlaan the Vice President, as well as the Human Resources Manager, Jessica Morse, to discuss Plaintiff's work-related concerns.

19. Plaintiff's request for a meeting was granted and it took place on October 23, 2018, after Plaintiff was off the time clock.

20. Based upon Defendant's Open Door Policy, Plaintiff had a legitimate expectation that he could address his work-related concerns at the October 23, 2018 meeting without fear of retaliation or punishment.

21. During the October 23, 2018 meeting a number of issues were discussed involving workplace interactions between Plaintiff and his co-workers.

22. At the end of the October 23, 2018 meeting Plaintiff was advised that his employment with Defendant was terminated.

23. Following the October 23, 2018 meeting, and shocked at the action taken, Plaintiff contacted his former Supervisor, Eric Jensen to discuss what had happened. Eric Jensen advised Plaintiff that he would have the Vice President, Paul Vanderlaan follow up with Plaintiff.

24. Later in the day and following the October 23, 2018 meeting, Paul Vanderlaan contacted Plaintiff over the telephone to continue addressing Plaintiff's workplace concerns. During this telephone call, Paul Vanderlaan advised Plaintiff that he would reconvene with Mike Dipiazza and Jessica Morse to consider whether a termination of Plaintiff's employment would be implemented.

25. At the end of the telephone call Paul Vanderlaan advised Plaintiff that he would call him in a few days to find out how Plaintiff's foot surgery went and to let Plaintiff know the result of his reconvened meeting with Mike Dipiazza and Jessica Morse.

26. On or about November 1, 2018, Plaintiff received his earnings statement for the period beginning October 21, 2018 and ending on October 27, 2018.

27. Plaintiff's paycheck for the period beginning October 21, 2018 and ending on October 27, 2018 demonstrates that Plaintiff was paid wages for the day of October 24, 2018 as well as the day of October 25, 2018 which was a floating holiday.

28. Defendant's adopted policies make it clear that an employee who has been terminated is not entitled to be paid for floating holidays.

29. Plaintiff's paycheck for the period beginning October 21, 2018 and ending on October 27, 2018 demonstrates that Defendant made full and ordinary deductions from Plaintiff's paycheck for Plaintiff's medical and health benefits.

30. On or about November 6, 2018, Paul Vanderlaan called Plaintiff and asked him if Defendant's Human Resources Department had contacted him to pick up his tools.

31. Having not received any further communication from Defendant, Plaintiff on December 3, 2018 contacted Defendant's Human Resources Department to ask for his personnel file.

32. On or about December 5, 2018, Plaintiff received, via the United States Postal Service, an "Employee Termination Notice" ("Notice") from Defendant, the Notice was dated as of November 1, 2018, however the postmark on the envelope in which the Notice was contained was dated December 3, 2018.

33. The Notice states that Plaintiff was terminated on October 23, 2018.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\4515661.v1

34. The Notice states that Plaintiff was "termed via meeting with Paul Vanderlaan, M. Dipiazza + J. Morse on 10/23/18," for "engaging in behavior that creates discord that threatens harmony in the workplace."

35. The Notice also provides:

> Benefits Terminated: All medical, life and AD&D benefits which you are currently enrolled will terminate at midnight tonight. All dental and vision benefits which you ·are currently enrolled will terminate at the end of the month in which you are terminated. Any new claims for flexible spending benefits and/or short term disability benefits will no longer be accepted after the date of termination.
>
> You will receive an offer of COBRA coverage in the mail within two weeks of your termination date. This will give you a detail of the cost of your plan. You will be eligible for the same medical, dental, vision and Flex (FSA) coverage you had prior to termination. You will also be sent a "Certificate of Credible Coverage" form which should be kept as it may be required by future insurance carriers.

36. None of the content of the Notice was shared with Plaintiff on October 23, 2018 or thereafter until Plaintiff received the Notice in the mail.

37. Following, Plaintiff's termination of employment he never received any notice of his right to COBRA benefits.

38. Following, Plaintiff's termination of employment he never received an offer of COBRA coverage.

39. Following, Plaintiff's termination of employment he never received a "Certificate of Credible Coverage" form.

40. Plaintiff never received any of his short-term disability benefits while on short-term disability commencing on October 26, 2018.

41. Plaintiff did not receive a copy of his personnel file until January 2, 2019.

## COUNT I – WRONGFUL DISHCARGE

42. The Plaintiff incorporates herein all of the previous paragraphs by reference.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\4515661.v1

43. Defendant required its employees, including Plaintiff to abide by Defendant's adopted policies.

44. The provisions of Defendant's adopted policies, including but not limited to its Open Door Policy, apply to all Defendant's employees, its Officers and Directors.

45. Defendant's Open Door Policy was specifically adopted to maintain effective communications and to allow its employees to address their concerns, problems, or suggestions for improvement the workplace environment without fear of retaliation or punishment.

46. Defendant's Open Door Policy was designed to benefit Plaintiff and Defendant.

47. Defendant's Open Door Policy constituted an enforceable promise so made as to justify Plaintiff and other employees in understanding that a commitment had been made by Defendant that it would not terminate its employees, including Plaintiff, in retaliation for discussing work-related problems, questions, or requests as encompassed by the Policy.

48. The Defendant's Open Door Policy operated as a clear and specific employer policy statement circulated by Defendant to its general work force, containing a promise that employees, including Plaintiff, would not face retaliation for discussing work-related problems, questions, or requests.

49. The Defendant's Open Door Policy was instituted and disseminated by Defendant to its work force purposefully and pursuant to Defendant's recognition that such policies tend to encourage an orderly cooperative and loyal work force for the ultimate benefit to Defendant.

50. The Defendant's Open Door Policy constituted a term and condition of employment for all of Defendant's employees including Plaintiff.

51. Predicated on the terms and conditions of employment, including Defendant's Open Door Policy, Plaintiff had a legitimate expectation that he wouldn't be terminated for sharing his concerns

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

SHRR\4515661.v1

relating to the workplace environment with his Supervisor, Vice President and the Human Resources Manager.

52. Plaintiff had a contractual right and/or legitimate expectation that he could confide in his Supervisor, the Vice President and the Human Resources Manager regarding workplace issues without retaliation and without being terminated pursuant to Defendant's Open Door Policy.

53. Based upon Defendant's promise that Plaintiff did not have to fear retaliation or punishment pursuant to Defendant's Open Door Policy, Plaintiff freely spoke his mind about work place issues at the October 23, 2018 meeting only to learn at the end of the meeting that Defendant's representatives chose to terminate Plaintiff's employment.

54. Plaintiff was terminated in retaliation for the comments he made during the October 23, 2018 meeting.

55. Defendant's promise to Plaintiff that he could be at ease without fear of retaliation or punishment during a meeting with management provided Plaintiff with what he thought was a safe and secure environment in which to speak freely to his Supervisor, Vice President and the Human Resources Manager.

56. Defendant's promise to Plaintiff that he could be at ease without fear of retaliation or punishment during a meeting with management was breached during said October 23, 2018 meeting the decision was made to terminate Plaintiff's employment.

57. As a direct cause of Defendant's breach of its Open Door Policy, Defendant wrongfully terminated Plaintiff's employment in violation of its terms and conditions of employment as promised by Defendant.

58. As a direct cause of Defendant's breach of its Open Door Policy, Plaintiff has suffered damages including but not limited to all back wages, lost future wages, lost disability pay, payment of all

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

back and future fringe benefits including health care and retirement benefits, and any wages that he would have been paid had the wrongful termination not taken place.

WHEREFORE, Plaintiff requests that this Honorable Court order the payment of all back and future wages, payment of all back and future fringe benefits including retirement benefits, and any wages that he would have been paid had the wrongful termination not taken place, tort damages, the payment of all costs of litigation, including reasonable attorneys' fees, court costs, and any witness fees, and such other damages that it deems appropriate.

### COUNT II – VIOLATION OF FMLA

59. The Plaintiff incorporates herein all of the previous paragraphs by reference.

60. At all relevant times Plaintiff was an employee as defined under the FMLA.

61. At all relevant times Plaintiff was entitled to leave under the FMLA to bond with and care for his newborn daughter as set forth in 29 U.S.C. § 2612(a)(1)(A) and 29 CFR 825.120.

62. At all relevant times Defendant has been engaged in a commerce affecting interstate commerce and is an "employer" within the meaning of 29 U.S.C. § 2611(4).

63. At all relevant times Defendant has employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year.

64. At all relevant times Plaintiff gave notice to Defendant of Plaintiff's intention to take leave under the FMLA.

65. Because Plaintiff had worked for Defendant for greater than twelve (12) months preceding February 1, 2018, because he had worked for Defendant for greater than one thousand two hundred and fifty (1,250) hours in the twelve (12) months preceding February 1, 2018, and because Defendant employed more than fifty (50) persons within seventy-five (75) miles of the worksite where it employed

Plaintiff, as of February 1, 2018, Plaintiff was an "eligible employee" within the meaning of 29 U.S.C. § 2612(a)(1).

66. Plaintiff sought leave under the FMLA from Defendant and provided Defendant with advance written notice of his need for leave for up to twelve (12) weeks to bond with and care for his newborn daughter.

67. At all relevant times Plaintiff was denied benefits to which he was entitled under the FMLA.

68. The Defendant did not respond within five (5) business days of Plaintiff's request for leave under the FMLA.

69. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA.  See 29 U.S.C. § 2615(a)(1).

70. A violation of 29 U.S.C. § 2615(a)(1) creates a basis of recovery for interference with Plaintiff's FMLA rights.  See 29 U.S.C. § 2617.

71. As a direct cause of Defendant wrongfully denying and interfering with Plaintiff's rights as provided to him under the FMLA, Plaintiff has been damaged as he has incurred the cost of providing care for his newborn daughter that he would not have otherwise incurred.

WHEREFORE, Plaintiff requests that this Honorable Court award Plaintiff all damages to which he is entitled under the FMLA, liquidated damages in a like amount, interest allowed by law, reasonable attorneys' fees, reasonable expert witness fees, and other costs of the action.

## COUNT III – VIOLATION OF ERISA

72. The Plaintiff incorporates herein all the previous paragraphs by reference.

73. At all relevant times, Defendant maintained a "group health plan" within the meaning of 29 U.S.C. § 1167(1) and therefore was subject to COBRA.

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation

74. At all material times, Defendant employed twenty (20) or more employees on a typical business day during the relevant preceding calendar year. 29 U.S.C. § 1161(b).

75. Plaintiff was provided coverage under a group health plan by virtue of his performance of services for Defendant and was, at all material times, a "covered employee" under COBRA. 29 U.S.C. § 1167(2).

76. Plaintiff's termination was a qualifying event within the meaning of 29 U.S.C. § 1163(2).

77. Following Plaintiff's termination, he was not timely notified of his rights under COBRA, in violation of 29 U.S.C. § 1166 (a)(2) & (c).

78. As a direct and proximate result of Defendant's violation of COBRA, Plaintiff has sustained injuries and damages, including the loss of health insurance benefits, and has been placed in financial distress and has incurred medical bills, physicians bills and related health bills that would have been covered had Plaintiff been aware of his COBRA rights.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant in whatever amount Plaintiff may be found to be entitled, including the COBRA damage provision outlined in 29 U.S.C. § 1132, together with interest, costs, reasonable attorneys' fees, actual damages and such other relief as the Court deems just under the circumstances.

Dated: January 30, 2019

/s/ Kevin B. Even
Kevin B. Even (P38599)
Smith Haughey Rice & Roegge
Attorneys for Plaintiff
keven@shrr.com
900 Third St., Ste 204
Muskegon, MI 49440
231-724-4320

SHRR\4515661.v1

SMITH HAUGHEY RICE & ROEGGE, A Professional Corporation